# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEON SANTOS, </br></br> Plaintiff, </br></br> v. </br></br> UNITED NETWORK FOR ORGAN SHARING; TUFTS MEDICAL CENTER; and MASSACHUSETTS GENERAL BRIGHAM INCORPORATED, </br></br> Defendants. | Civil Action No. 1:24-cv-11692-IT |

## UNOS'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant United Network for Organ Sharing ("UNOS") submits this memorandum of law in support of its motion to dismiss the Complaint of Plaintiff Deon Santos ("Plaintiff").

## I.     INTRODUCTION

Years ago, Congress recognized the need for a national system to oversee the allocation of donated organs. Congress also recognized, however, that transplant policy is best left in the hands of medical experts, in consultation with the patients, donors, and families who are most affected by it. To balance these interests, Congress enacted legislation directing the Secretary of Health and Human Services (the "Secretary" or "HHS") to provide for the establishment of an Organ Procurement and Transplantation Network ("OPTN"). To operate the OPTN, Congress instructed the Secretary to contract with a private nonprofit entity that had expertise in organ procurement and transplantation. For the past 39 years, Defendant United Network for Organ Sharing ("UNOS")—which is a private, nonprofit corporation—has been privileged to serve as the OPTN contractor.

Plaintiff contends that UNOS discriminated against him by permitting and encouraging transplant hospitals, including co-defendants Tufts Medical Center ("Tufts") and Massachusetts General Brigham Incorporated ("Mass General Brigham") (collectively, the "Defendant Transplant Hospitals"), to use a race-conscious methodology to determine his estimated glomerular filtration rate ("eGFR")—a metric that measures a patient's kidney function. Plaintiff alleges that the Defendant Transplant Hospitals' use of a race-conscious eGFR impaired his position on the kidney transplant waitlist and, by extension, how soon he would receive a kidney transplant. Based upon these allegations, Plaintiff advances two claims against UNOS: (1) violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., and (2) violation of the Massachusetts Public Accommodation Law ("MPAL"), Mass. Ann. Laws ch. 272, § 98.

Plaintiff's claims against UNOS are legally defective and should be dismissed with prejudice for five reasons.

*First*, Plaintiff does not plausibly allege that UNOS discriminated against him—an essential element of his Title VI and MPAL claims. Notably, Plaintiff does not identify any specific OPTN or UNOS policy regarding how transplant hospitals should calculate their patients' eGFRs. In fact, the OPTN kidney policy in effect during the relevant time was completely silent as to the eGFR methodology transplant hospitals should use. Moreover, the Complaint contains no factual support for Plaintiff's conclusory assertion that UNOS "encouraged" the Defendant Transplant Hospitals to use a race-conscious eGFR methodology. And Plaintiff's assertion that the Defendant Transplant Hospitals acted as UNOS's agent when measuring Plaintiff's kidney function is baseless. The Complaint contains absolutely no facts that establish an agency relationship between UNOS and the Defendant Transplant Hospitals.

*Second*, Plaintiff's Title VI claim fails for the additional reason that UNOS is not a recipient of "federal financial assistance," as the statute requires. To the contrary, allegations in the Complaint highlight that UNOS is a government contractor that is compensated by the government for administering the national transplant waitlist.

*Third*, Plaintiff's MPAL claim also fails because Plaintiff did not first file a complaint with the Massachusetts Commission on Discrimination ("MCAD") and then either wait 90 days or obtain MCAD's permission to file this lawsuit, as Massachusetts law requires. Because Plaintiff failed to satisfy this threshold requirement, the Court cannot hear Plaintiff's MPAL claim.

*Fourth*, although his prayer for relief is not completely clear, Plaintiff appears to request injunctive relief against UNOS. But, as Plaintiff acknowledges, the OPTN has already adopted (and UNOS has already implemented) policies that (1) preclude transplant hospitals from using a

race-based coefficient to calculate their patients' eGFRs and (2) instruct transplant hospitals to determine their patients' eligibility for accrued wait time modifications. As a result of these actions, Plaintiff's accrued wait time has been modified, and Plaintiff cannot credibly assert any risk of *future* harm. Therefore, Plaintiff lacks standing to seek injunctive relief from UNOS.

*Fifth*, Plaintiff's request for punitive damages should be stricken because punitive damages are not available under Title VI and Plaintiff fails to allege UNOS engaged in the outrageous and egregious conduct necessary to warrant punitive damages under the MPAL.

## II. FACTUAL BACKGROUND

In 1984, Congress passed the National Organ Transplant Act ("NOTA"), creating the OPTN, an entity tasked with maintaining a national registry for organ matching. Dkt. 1, Compl. ¶ 32. Since that time, UNOS—a private, nonprofit corporation—has operated as the implementing arm of the OPTN under a federal contract, as required by the NOTA. *Id.* ¶ 33.

In its role as the implementing arm of the OPTN, UNOS manages the national transplant waitlist, matching donors to recipients 24 hours a day, 365 days a year. *Id.* To provide this service, UNOS uses a software application known as UNet, which—as required by NOTA—is designed so that each time a deceased donor organ becomes available, UNet's algorithm generates a ranked list of potential matches from the national transplant waitlist. *Id.* ¶ 38. Transplant organs are offered to patients through transplant hospitals—such as the Defendant Transplant Hospitals—in accordance with such OPTN-required rankings. *Id.* Plaintiff alleges that a significant factor in ranking candidates for potentially compatible organ transplants is a patient's accrued "wait time"— i.e., the amount of time that has passed since a patient first qualified to accrue wait time on the national transplant waitlist. *Id.* ¶ 39.

To be placed on the national transplant waitlist, a patient must first visit a transplant hospital to be evaluated for transplantation by his or her physician. *Id.* ¶ 35. In this way, transplant hospitals

3

serve as "gatekeepers" to patients seeking to be placed on the national transplant waitlist. *Id*. In maintaining the national transplant waitlist, UNOS necessarily relies on transplant hospitals to provide relevant medical information for each patient. *Id*. ¶ 37. Plaintiff concedes this fact. *Id*.

When a patient seeks a kidney transplant, the patient's kidney function is among the relevant medical information that transplant hospitals measure. One way that transplant hospitals can determine a patient's kidney function is to calculate his or her "estimated glomerular filtration rate," commonly referred to as an "eGFR." *Id*. ¶ 1. Once calculated, the hospital inputs the patient's eGFR into the UNet system. *Id*. ¶ 37. Although a patient may be registered on the national kidney waitlist, a patient's eGFR can impact when he or she is eligible to begin accruing wait time. *Id*. ¶ 41. Specifically, if a patient is not supported by regularly administered dialysis, a patient registered on the national kidney waitlist will not begin accruing wait time on that list until his or her eGFR falls equal to or below 20 ml/min. *Id*.

Plaintiff claims that the Defendant Transplant Hospitals' use of a race-conscious eGFR "artificially" increased his eGFR scores above 20 ml/min, which delayed him from being added to the kidney transplant waitlist and starting to accrue wait time. *E.g., id*. ¶¶ 1, 43–44. More specifically, Plaintiff alleges that, but for the Defendant Transplant Hospitals' historical use of a race-conscious eGFR test methodology, he would have "qualified to join the national kidney waitlist sooner." *Id*. ¶ 45.

As to UNOS, Plaintiff asserts, without any factual support, that a "UNOS policy encouraged and allowed for use of the race-based coefficient, and UNOS knowingly used modified eGFR scores and manipulated wait times when ranking patients for kidney transplants." *Id*. ¶ 46.

4

The kidney policy in effect during the relevant time (the "Prior OPTN Kidney Policy"), however, clearly refutes Plaintiff's unsubstantiated assertion.[1]

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the factual allegations in a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts "need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." *Maldonado v. Fontanes*, 563 F.3d 263, 266 (1st Cir. 2009). In reviewing a complaint, a court "must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Strahan v. Sec'y, Mass. Exec. Office of Energy and Env't Affairs*, 436 F. Supp. 3d 470, 475 (D. Mass. 2020) (quoting *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d. 82, 84 (1st Cir. 2015)). The plausible factual allegations must ultimately be able to support the legal conclusion that underlies each claim for relief. *Id*.

"Rule 12(b)(1) motions challenging subject-matter jurisdiction are divided into two categories: facial challenges and factual challenges." *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021) (citing *Torres-Negrón v. J & N Records, LLC*, 504 F.3d 151, 162 (1st Cir. 2007)). "With facial challenges . . . [t]he analysis is essentially the same as a Rule 12(b)(6) analysis: we accept the well-pleaded facts alleged in the complaint as true and ask whether the plaintiff has stated a plausible claim that the court has subject matter jurisdiction." *Id.* (citing *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)).

---

[1] A copy of the Prior OPTN Kidney Policy is attached hereto as Exhibit 1. The Court can consider this document in connection with the pending motion to dismiss. *See Squeri v. Mount Ida Coll.*, 954 F.3d 56, 61 (1st Cir. 2020) ("On a motion to dismiss, [courts] may also consider documents incorporated by reference in the complaint, matters of public record, and other matters susceptible to judicial notice.") (quotation omitted).

## IV. ARGUMENT

For the reasons explained below, each of the claims asserted against UNOS are legally defective and should be dismissed, with prejudice.

### A. Plaintiff's claims should be dismissed because Plaintiff fails to allege actionable discrimination by UNOS.

"In order to state a claim for violation of Title VI, a plaintiff must allege facts demonstrating intentional discrimination." *Bray v. Worcester Polytechnic Inst.*, 596 F. Supp. 3d 142, 156 (D. Mass. 2022); *see also id.* (Title VI "prohibits only intentional discrimination"); *see generally Alexander v. Sandoval*, 532 U.S. 275 (2001) (Title VI outlaws only intentional discrimination and that there is no private right of action under Title VI for programs with alleged disparate impact). Intent to discriminate means "more than intent as volition or intent as awareness of consequences[,]" rather, it means "that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Bray*, 596 F. Supp. 3d at 156 (quotation omitted).

Conclusory allegations of intentional discrimination fail to state a valid claim. *Id.* at 157 ("[B]arebone, minimal . . . and conclusory allegations . . . do not state a plausible claim for violation of Title VI"); *Lebrón v. Puerto Rico*, 770 F.3d 25, 31 (1st Cir. 2014) ("Simply alleging in a conclusory fashion that the defendants engaged in 'intentional discrimination' . . . is not enough to satisfy the pleading standard."); *King v. Ayotte*, 860 F. Supp. 2d 118, 128 (D.N.H. 2012) ("Conclusory allegations of generalized racial bias do not establish discriminatory intent.").

Plaintiff's own allegations establish that the Defendant Transplant Hospitals, not UNOS, determined how to calculate his eGFR score and thus elected whether to use a race-neutral or race-conscious methodology to do so. Compl. ¶ 37 ("When a new patient is added to the waitlist, the referring hospital enters the patient's . . . eGFR scores"). In an apparent attempt to circumvent this

key fact, Plaintiff alleges that UNOS "encouraged" the Defendant Transplant Hospitals to calculate Plaintiff's eGFR score using the race-based coefficient and to submit that score to UNet. *See* Compl. ¶¶ 46, 79. Notably, however, Plaintiff fails to identify any policy by which UNOS purportedly "encouraged" use of a race-conscious eGFR methodology. That is because no such policy existed. The Prior OPTN Kidney Policy was silent as to how transplant hospitals should calculate eGFRs. *See generally* Ex. 1. To be clear, the policy did not even mention the methodology by which to calculate patients' eGFR scores, let alone "encourage" transplant hospitals to use a race-based approach. *Id*. Plaintiff does not and cannot refute this critical fact.

Nor does Plaintiff identify any other policy statement, press release, or document in which UNOS advocates for or encourages use of a race-conscious eGFR methodology. That is because, consistent with Plaintiff's own allegations, this decision was left to the medical judgment of transplant centers that perform the eGFR calculations, based upon what they believed to be the correct medical criteria. *See* Compl. ¶ 37.

In an attempted end-run around this glaring problem, Plaintiff alleges that UNOS implicitly permitted the transplant hospitals, including the Defendant Transplant Hospitals, to calculate eGFR scores using a race-conscious coefficient. *Id.* ¶ 46. Even if true, such facts fall woefully short of establishing the requisite element of intentionality under Title VI. *See Doe v. Los Angeles Unified Sch. Dist.*, No. 216-CV-00305-CAS(JEMx), 2016 WL 4238636, at *4 (C.D. Cal. Aug. 8, 2016) (concluding that the plaintiff's allegations about the defendants' lack of racial sensitivity training were "insufficient to state a claim for intentional discrimination in violation of Title VI" because while "Title VI prohibits [recipients of federal financial assistance] from engaging in unlawful discrimination, it does not require them to implement specific policies or to respond to discrimination in a particular manner"); *Thompson v. Vista View, LLC*, No. 2:06-CV-00585, 2009

7

WL 10688422, at *4 (S.D.W. Va. Jan. 22, 2009) (rejecting the plaintiff's argument that Title VI "imposed a duty on [one defendant] to prevent the other defendants' alleged discriminatory conduct").

Even more attenuated, Plaintiff alleges that the Defendant Transplant Hospitals "serve[d] as UNOS's agent[s]" when they calculated his eGFR score. *See* Compl. ¶¶ 36, 79, 86. "Under Massachusetts law, 'agency results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control.'" *Driscoll v. McCann*, 505 F. Supp. 3d 32, 37 (D. Mass. 2020) (quoting *Kirkpatrick v. Bos. Mut. Life Ins. Co.*, 393 Mass. 640, 645 (1985)). Here, the Complaint contains no facts that suggest, let alone establish, that UNOS expressly or impliedly controlled the manner by which the Defendant Transplant Hospitals calculated Plaintiff's eGFR score. Indeed, as noted above, the Prior OPTN Kidney Policy did not prescribe how transplant hospitals should calculate eGFR scores, *see generally* Ex. 1, and Plaintiff admits that decision was left to the Defendant Transplant Hospitals. Compl. ¶ 37. Succinctly stated, the Complaint contains no facts that even remotely establish an agency relationship between UNOS and the Defendant Transplant Hospitals. Accordingly, Plaintiff's Title VI claim cannot stand.

Although an MPAL claim —unlike a Title VI claim—may be maintained under a "disparate impact" theory, Plaintiff cannot do so here because UNOS did not have a policy regarding how transplant hospitals should calculate eGFR scores. *See Griffiths v. Town of Hanover*, No. 1:11-CV-12115-JLT, 2012 WL 3637791, at *4 (D. Mass. Aug. 21, 2012) ("the plaintiff alleging a violation of the [MPAL] must plead . . . either a purposeful intent to discriminate on the part of the defendant, or the disparate impact *of a defendant's policy* on persons in plaintiff's class." (emphasis added)).

8

Simply put, Plaintiff alleges no facts establishing that UNOS discriminated against him. Accordingly, Plaintiff's Title VI and MPAL claims against UNOS are legally defective and should be dismissed.

### B. Plaintiff's Title VI claim fails because he does not plausibly allege that UNOS receives federal financial assistance.

Title VI applies only to recipients of "federal financial assistance." 42 U.S.C. § 2000(d); *Thompson v. Sw. Airlines Co.*, No. CIV. 04-CV-313-SM, 2006 WL 287850, at *8 (D.N.H. Feb. 6, 2006) (noting that the defendant's receipt of federal financial assistance is "a necessary prerequisite to liability under Title VI"). Importantly, "[c]ontracts with the federal government are not federal financial assistance[.]" *Choi v. D'Appolonia*, No. 06-1514, 2007 WL 9782908, at *13 (W.D. Pa. Oct. 15, 2007); *see also Jarno v. Lewis*, 256 F. Supp. 2d 499, 504 (E.D. Va. 2003) ("[P]rocurement contracts do not constitute federal financial assistance where the recipient receives no government subsidy for its services but rather acts solely as a market participant.").

Thus, to state a viable Title VI claim, Plaintiff must allege facts establishing that UNOS receives something beyond compensation for the contractual services it provides to the government. *See Choi*, 2007 WL 9782908, at *13 ("[A]llegations based on a [public-private] contractual relationship are not sufficient to state a claim under Title VI."); *Jarno*, 256 F. Supp. 2d at 504–05 ("Although the complaint alleges that the [defendant prison authority] 'is a federal funding recipient,' [the plaintiff] has provided no factual basis for this assertion. Therefore . . . the complaint is insufficient as a matter of law[.]"); *Estate of Earnest Boyland v. Young*, 242 F. Supp. 3d 24, 29 (D.D.C. 2017) ("While Plaintiffs allege in conclusory language that [the defendant] is a 'direct recipient of federal funds' and 'an entity receiving federal funds' Plaintiffs have not alleged facts to establish that [the defendant] receives a subsidy, or anything other than mere compensation, for its services.").

9

Plaintiff alleges that UNOS is a private, nonprofit company that operates the national transplant wait list under a government contract. *See* Compl. ¶¶ 32, 34, 76. Plaintiff then asserts, in a conclusory fashion, that the federal funds provided to UNOS act as a subsidy, not as compensation for services rendered under the OPTN Contract. *Id.* ¶ 76. According to Plaintiff, this is because UNOS does not provide any goods or services to the government. *Id.* But Plaintiff's conclusory say-so is unavailing and does not disrupt the reality that the funds provided to UNOS are compensation for services rendered under the OPTN Contract, not subsidies. *Id.* ¶¶ 32, 34.[2]

Numerous other courts have recognized UNOS's status as a government contractor. *See, e.g., Callahan v. United States Dep't of Health & Human Servs.*, 434 F. Supp. 3d 1319, 1328 n.4, 1351 (N.D. Ga. 2020) (characterizing UNOS as a "private contracting agency" and the "OPTN contractor") (citation omitted); *id.* at 1342 (noting that "UNOS . . . is contracted to fulfill OPTN's national policy responsibilities"); *Adventist Health Sys./SunBelt, Inc. v. United States Dep't of Health & Human Servs.*, 17 F.4th 793, 797 (8th Cir. 2021) ("[NOTA] provides that the Secretary will contract for the establishment and funding of th[e] [OPTN].") (*citing* 42 U.S.C. § 274(a); *Doe v. Univ. of Chi. Med. Ctr.*, 2014 IL App (1st) 121593, ¶ 5, 386 Ill. Dec. 140, 141, 20 N.E.3d 1, 2 ("[I]n 1984, Congress established [the OPTN], which provided for the creation of a network to be operated by a private not-for-profit organization under a federal contract. In 1986, [UNOS] was selected to be the contractor."). Moreover, the OPTN Contract plainly supports the contractual

---

[2] It is a matter of public record that UNOS is a government contractor. *See* Health Resources & Services AdministrationHRSA.gov, *About the OPTN*, https://optn.transplant.hrsa.gov/about/ ("OPTN contractor [UNOS] was awarded the initial OPTN contract . . . and continues to administer the OPTN today."); Health Resources & Services AdministrationHRSA.gov, *About the OPTN Charter*, https://optn.transplant.hrsa.gov/about/optn-charter/ ("The OPTN Contractor serves as the OPTN by contract with the [HHS.]"); *UNOS and HRSA Agree on New Short-Term OPTN Contract*, UNOS.org (Mar. 29, 2024), https://unos.org/media-resources/releases/unos-and-hrsa-agree-on-new-short-term-optn-contract/.

relationship between UNOS and HHS. HHS awarded the OPTN Contract, and all previous ones, following standard federal acquisition procedures, resulting in a cost-reimbursement, cost-sharing service agreement between UNOS and HHS.[3]

Apparently recognizing that UNOS's role as a government contractor torpedoes his Title VI claim, Plaintiff asserts that UNOS's financial documents reference a grant from the Federal government. Compl. ¶ 77. The relevant inquiry, however, is not how the payments are characterized for accounting purposes or the mechanism by which UNOS receives them. Instead, the question is whether the payments compensate a contractor of the federal government or operate as a subsidy. *See Phillips v. Goldsteins', Rosenbergs', Raphael-Sachs, Inc.*, Case No. 12-3833, 2013 WL 6506170, at *3 (E.D. Pa. Dec. 10, 2013) ("[A]n entity receives 'federal financial assistance' when it receives a subsidy. Where the government intends only to compensate defendant for goods and services received, there is no subsidy, even if the compensation exceeds fair market value.") (citations omitted). Here, Plaintiff's own allegations establish that the payments at issue compensate UNOS, through its contractual relationship with the federal government, for the service of managing the national transplant waitlist. Accordingly, Plaintiff's Title VI claim cannot stand.

### C. Plaintiff's MPAL claim must be dismissed because Plaintiff failed to timely file an MCAD complaint.

This Court cannot entertain Plaintiff's MPAL claim because Plaintiff fails to allege that he filed a complaint with the Massachusetts Commission on Discrimination ("MCAD") and waited

---

[3] Plaintiff's counsel has a copy of the OPTN Contract from litigation involving a different patient. If the Court would like to review a copy of the OPTN Contract in connection with this Motion, UNOS will provide this confidential contract pursuant to the Court's applicable rules for submitting confidential documents under seal.

11

the required 90 days. The private right of action to enforce MPAL is found in Chapter 151B, which provides:

> Any person claiming to be aggrieved . . . by any other unlawful practice within the jurisdiction of the commission, may, ***at the expiration of ninety days after the filing of a complaint with the commission***, or sooner if a commissioner assents in writing, but not later than three years after the alleged unlawful practice occurred, bring a civil action for damages or injunctive relief or both in the superior or probate court for the county in which the alleged unlawful practice occurred . . .

Mass. Gen. Laws ch. 151B, § 9 (emphasis added); see also *Griffiths*, 2012 WL 3637791, at *4 (noting that the [MPAL] affords relief subject to [Chapter 151B]").[4] Thus, "[a]ctions brought under the [MPAL] are subject [to the] nonwaiveable requirement that a plaintiff file a complaint with the MCAD" and either wait 90 days or obtain the commissioner's consent "before filing a civil suit." *Id.* Plaintiff fails to allege that he complied with these "jurisdictional prerequisites;" thus, the Court cannot hear his MPAL claim. *Id.*

### D.     Plaintiff lacks standing to seek injunctive relief.

The Court must dismiss Plaintiff's request for an injunction because Plaintiff fails to allege that he has standing to seek such relief. Article III "standing is not dispensed in gross," and thus "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Wilkins v. Genzyme Corp.*, 93 F.4th 33, 40 (1st Cir. 2024) (quoting *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017)). "Therefore, a plaintiff who has standing to seek damages must also demonstrate standing to pursue injunctive relief." *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 451 (D. Mass. 2018).

---

[4] MPAL claims are within MCAD's jurisdiction. *See id.* § 5 ("Any person claiming to be aggrieved by an alleged unlawful practice or alleged violation of . . . [Mass. Gen. Laws. ch. 272, § 98] . . . may . . . file with [MCAD] a verified complaint . . . .)

12

"[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring" if "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Roe v. Healey*, 78 F.4th 11, 20 (1st Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021)); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)); *see also Weekes v. Cohen Cleary P.C.*, No. CV 23-10817-NMG, 2024 WL 1159642, at *2 (D. Mass. Mar. 15, 2024) ("Alleged future harm must be certainly impending or substantially likely to occur; 'it is not enough that the harm might occur at some future time.'") (quoting *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012)); *Phillips v. United States*, No. 219CV06338SVWJEM, 2021 WL 2587961, at *5 (C.D. Cal. June 22, 2021) ("Plaintiffs seeking injunctive relief must show that it is likely that they will suffer future injury *from the conduct sought to be enjoined*.") (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983)) (emphasis added).

The foundation of Plaintiff's Complaint is his contention that UNOS discriminated against him by encouraging the Defendant Transplant Hospitals to use a race-conscious eGFR to measure his kidney function. Compl. ¶¶ 46, 79. Plaintiff seeks "preliminary and permanent injunctions enjoining . . . UNOS . . . from engaging in the above-described racial discrimination." *See id.*, Prayer for Relief. But Plaintiff fails to allege any facts establishing that the alleged racial discrimination is ongoing or is substantially likely to reoccur. To the contrary, Plaintiff acknowledges that in 2022, the OPTN implemented a policy precluding transplant hospitals from using a race-based coefficient. *Id.* ¶ 17. Plaintiff also acknowledges that in January 2023, transplant hospitals were instructed to submit wait time modification requests for any patients who had been impacted by prior use of a race-conscious eGFR. *Id.* ¶ 18. And Mass General Brigham has already recalculated Plaintiff's eGFR results using a test method that does not contain a race-conscious

modifier. *Id*. ¶ 19. As a result, Plaintiff's wait time on the kidney transplant list has been adjusted. *Id*. Each of these events occurred prior to the time Plaintiff filed his Complaint.

Given these facts, Plaintiff cannot credibly assert any risk of future harm regarding UNOS's challenged actions and, therefore, he has no standing to request an injunction against UNOS.

### E. Plaintiff's request for punitive damages should be stricken.

The Court should strike Plaintiff's request for punitive damages. It is well-established that punitive damages are not available under Title VI. *See Kestenbaum v. President & Fellows of Harvard Coll.*, No. CV 24-10092-RGS, 2024 WL 3658793, at *4 n.7 (D. Mass. Aug. 6, 2024) ("Compensatory damages are available under Title VI, but punitive . . . damages are not.") (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)). Moreover, "[u]nder Massachusetts law, punitive damages may be awarded in the context of a discrimination claim 'only where the defendant's conduct is outrageous or egregious.'" *Joyce v. Town of Dennis*, 720 F.3d 12, 22 (1st Cir. 2013) (quoting *Haddad v. Wal-Mart Stores, Inc.*, 455 Mass. 91, 110 (2009)). And, as explained in Part IV(A), *supra*, Plaintiff fails to allege that UNOS engaged in "outrageous or egregious" conduct here. Accordingly, Plaintiff's request for punitive damages should be stricken.[5]

## V. CONCLUSION

For the reasons set forth above, UNOS respectfully requests that the Court dismiss each of the claims asserted against UNOS, *with prejudice*.

---

[5] As a final matter, UNOS notes that a putative class action complaint against UNOS is pending in the U.S. District Court for the Central District of California. *Randall v. United Network for Organ Sharing*, Civil Case No. 2:23-cv-02576-MEMF-MAA. The factual allegations presented in the *Santos* Complaint overlap to some extent with the allegations in the *Randall* complaint. In *Randall*, the court entered an order granting in part and denying in part UNOS's motion to dismiss. In large part, however, the applicable law and facts presented in the motion before this Court differ from those presented in *Randall*. Accordingly, the Court should review the merits of the unique arguments presented in this motion independent of the court's analysis in *Randall*.

Dated: September 3, 2024

Respectfully submitted,

UNITED NETWORK FOR ORGAN SHARING

*/s/ Dallin R. Wilson*
Katherine Perrelli (BBO No. 549820)
Dallin R. Wilson (BBO No. 676662)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210
(617) 946-4817
kperrelli@seyfarth.com
drwilson@seyfarth.com

Daniel M. Blouin (admitted *pro hac vice*)
Thomas G. Weber (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel.: (312) 558-5600
Fax: (312) 558-5700
dblouin@winston.com
tgweber@winston.com

**CERTIFICATE OF SERVICE**

On September 3, 2024, I caused the foregoing to (i) be filed with the Clerk of the Court by the Court's ECF system and (ii) served upon all parties by sending a true and correct copy of by email and first class mail.

Dated:   September 3, 2024            */s/ Dallin R. Wilson*
                                     Dallin R. Wilson