UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEON SANTOS, <br><br> Plaintiff, <br><br> v. <br><br> UNITED NETWORK FOR ORGAN SHARING, TUFTS MEDICAL CENTER, and MASSACHUSETTS GENERAL BRIGHAM INCORPORATED, <br><br> Defendants. | Civil Action No. 1:24-cv-11692-IT |

MEMORANDUM AND ORDER

September 15, 2025

Pending before the court are Defendant Massachusetts General Brigham Incorporated's ("Massachusetts General Brigham") Motion to Dismiss [Doc. No. 30] and Defendant Tufts Medical Center's ("Tufts") Motion to Dismiss [Doc. No. 24], which seek dismissal of Plaintiff Deon Santos's claims under Title VI of the Civil Rights Act and Massachusetts General Laws c. 272, § 98, based on alleged racial discrimination in the administration of the national kidney transplant waiting list. For the reasons set forth below, Tufts's Motion to Dismiss [Doc. No. 24] is DENIED. Massachusetts General Brigham's Motion to Dismiss [Doc. No. 30] is GRANTED as to Santos's request for injunctive relief preventing Defendants from engaging in discrimination via application of a race-based eGFR adjustment, and is otherwise DENIED.

I.   **Factual Background as Alleged in Plaintiff's Complaint**

   A.   *The National Kidney Transplant Waitlist*

The court incorporates the factual background set forth in the Memorandum and Order [Doc. No. 46] addressing Defendant United Network for Organ Sharing's ("UNOS") Motion to

Dismiss [Doc. No. 11]. To summarize, in 1984, Congress passed the National Organ Transplant Act, creating the Organ Procurement and Transplantation Network ("OPTN"), which was tasked with maintaining a national registry for organ matching. Compl. ¶ 32 [Doc. No. 1]; see also 42 U.S.C. § 274(a)–(b). UNOS operates the OPTN and manages a national kidney transplant waiting list. Compl. ¶¶ 32–33 [Doc. No. 1].

UNOS does not allow kidney disease patients to apply directly for inclusion on the kidney waitlist. Id. ¶ 34. To be placed on the national kidney transplant waitlist, patients must first visit one of over 200 transplant hospitals and receive a referral from their physician. Id. ¶ 35.

The kidney waitlist is maintained using UNOS software called UNet. Id. ¶ 37. A referring transplant hospital adds a new patient to the waitlist by entering the patient's name and relevant medical information, including estimated glomerular filtration rate ("eGFR") scores, into the UNet software. Id. The UNet software includes an algorithm that uses wait time as the primary factor in ranking patients for donor kidneys. Id. ¶ 46. "Wait time points" are a significant factor in determining a candidate's ranking in UNet's match runs. Id. ¶ 39. For decades, a race-based coefficient was applied to eGFR scores for Black patients seeking kidney transplants, overstating their kidney function by 16–18%. Id. ¶ 43. The race-based coefficient led to many Black kidney disease patients never qualifying for wait time based on eGFR score, and instead having their addition to the waitlist delayed until the start of dialysis, which is recommended when kidney function falls below 15 ml/min. Id. ¶ 45.

On January 5, 2023, UNOS announced a new policy requiring donor hospitals to notify patients that Black Americans will be considered for wait time adjustments where the race-based coefficient delayed their accrual of wait time, to investigate which patients are eligible for a wait

time adjustment, to request any adjustments with UNOS by January 3, 2024, and to notify patients of their status. Id. ¶ 59.

B.    *Defendants Massachusetts General Brigham and Tufts*

Massachusetts General Brigham and Tufts are kidney transplant hospitals that refer patients to UNOS's kidney waitlist. Id. ¶ 35. Hospitals like Massachusetts General Brigham and Tufts must agree to be bound by UNOS's published policies and procedures to act as transplant hospitals. Id. ¶ 36. When a new patient is referred to the waitlist, the referring transplant hospital, such as Massachusetts General Brigham and Tufts, enters the patient's name and relevant medical information, including eGFR scores, into UNet. Id. ¶ 37. Massachusetts General Brigham and Tufts receive financial assistance from the federal government and its programs, which funds both patient care and related operations. Id. ¶ 78.

C.    *Plaintiff Deon Santos*

Plaintiff Deon Santos is Black, see id. ¶ 3, and resides in Massachusetts, id. ¶ 23. Santos was diagnosed with kidney disease in 2007. Id. ¶ 5. Tufts referred him to the national kidney waitlist when he began regular chronic dialysis in 2008. Id. ¶¶ 5, 10. But for Tufts's use of the race-based coefficient, Santos would have been added to the waitlist earlier. Id. ¶ 11. Santos received a kidney transplant in January 2014, approximately six years after he was referred to the waitlist. Id. ¶ 11. The average wait time for a donor kidney is three to five years. Id.

Because Santos's health had deteriorated while he was waiting for the transplant, his new kidney failed within a few years. Id. ¶ 12. Massachusetts General Brigham added him to the kidney waitlist when he began regular dialysis again on or around July 2019. Id. ¶¶ 13–14.

Since beginning dialysis, he has received treatment for eight hours per day, seven days per week. Id. ¶¶ 5, 14. On February 9, 2024—over one year after UNOS notified donor hospitals

3

that they must no longer rely on the race-based coefficient—Massachusetts General Brigham notified Santos that he was eligible for a transplant wait time adjustment of 10 months. Id. ¶ 19. Santos became depressed following this notification, id. ¶ 20, and Massachusetts General Brigham marked Santos as "inactive" on the kidney waitlist because he suffers from depression, making him indefinitely ineligible to be considered for a donor kidney, id. ¶ 21.

## II.     Plaintiff's Claims Against Massachusetts General Brigham and Tufts

Santos asserts claims against Massachusetts General Brigham and Tufts for violation of Title VI of the Civil Rights Act of 1964 and violation of M.G.L. c. 272, § 98, which makes unlawful racial discrimination in places of public accommodation. Compl. ¶ 73–90 [Doc. No. 1].

## III.    Subject Matter Jurisdiction

### A.     *Standard of Review*

Rule 12(b)(1) is "[t]he proper vehicle for challenging a court's subject matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Id. At the pleading stage, the court should treat all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). Dismissal is appropriate only when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction. See id.

A challenge to the court's subject matter jurisdiction must generally be addressed before addressing the merits of a case. Acosta-Ramirez v. Banco Popular de P.R., 712 F.3d 14, 18 (1st Cir. 2013).

B.   *Discussion*

   1.   Standing to Pursue Claims Against Massachusetts General Brigham

Massachusetts General Brigham argues that Santos lacks standing to pursue his claims against it because he "has failed to allege[] a concrete and particularized injury that is fairly traceable to an action by [Massachusetts General Brigham]." Mem. ISO Massachusetts General Brigham Mot. to Dismiss ("MGB Mem") 8 [Doc. No. 31]. Massachusetts General Brigham argues that Santos's injury is instead based on Tufts's application of the race-based coefficient when Santos was first referred to the waitlist, and UNOS's acceptance of that eGFR calculation. Id. at 9.

The doctrine of standing is rooted in Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies." See U.S. Const. art. III, § 2, cl. 1; Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560-61).

   a.   Injury in Fact

To establish standing, "[t]he injury alleged must be . . . 'distinct and palpable,' . . . not 'abstract' or 'conjectural' or 'hypothetical[.]'" Allen v. Wright, 468 U.S. 737, 751 (1984) abrogated on other grounds, Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014). The Supreme Court has "repeatedly emphasized[]" that "discrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' . . . can cause serious non-economic injuries to those persons who are

personally denied equal treatment solely because of their membership in a disfavored group." Heckler v. Mathews, 465 U.S. 728, 739–40 & n.7 (1984) (quoting Miss. Univ. for Women v. Hogan, 458 U.S. 718, 725 (1982) and collecting cases). Stigmatizing injury caused by racial discrimination "is one of the most serious consequences" of racial discrimination "and is sufficient in some circumstances to support standing." Allen, 468 U.S. at 755. "[S]uch injury accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct." Id. (quoting Heckler, 465 U.S. at 739–740).

Santos has sufficiently alleged that he was denied equal treatment via application of the race-based eGFR coefficient. He alleges that patients begin accruing wait time on the kidney transplant waitlist when they meet one of two requirements: the patient's eGFR score falls below 20 mL/min or the patient begins dialysis. Compl. ¶ 41 [Doc. No. 1]. Further, Santos alleges that Black patients on the waitlist did not accrue wait time when their unadjusted eGFR scores fell below 20 mL/min because the race-based coefficient artificially inflated their scores above that threshold. Id. ¶ 44. And Santos has alleged that the race-based eGFR adjustment was applied to him such that his eGFR score artificially exceeded 20 mL/min, see id. ¶ 62, that he never qualified to accrue wait time by eGFR score, id. ¶ 45, and that he was notified that he was entitled to a wait time adjustment after the race-based coefficient was no longer used, id. ¶ 19. Where Santos has alleged that he was notified that he was entitled to an adjustment after the race-based coefficient was abandoned, it is reasonable to infer that he would have qualified to accrue wait time sooner—and thus would have been considered for a donor kidney in the same manner as non-Black patients—had the race-based coefficient not been applied to him. Santos has thus sufficiently pled unequal treatment sufficient to satisfy the injury-in-fact requirement. See Allen, 468 U.S. at 755; cf. Regents of Univ. of Cal. v. Bakke, 438 U.S. 265, 280 n.14 (1978)

(concluding plaintiff had standing where he was denied opportunity to compete for all available spots in medical school class).

        b.      Traceability

The traceability element "requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012). "Because the opposing party must be the source of the harm, causation is absent if the injury stems from the independent action of a third party." Id. 71–72. Consequently, "[t]he injury may be indirect, but the complaint must indicate that the injury is indeed fairly traceable to the defendant's acts or omissions." Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 261 (1977) (internal citation omitted).

Santos has satisfied the traceability requirement at this stage in alleging that conduct by Massachusetts General Brigham exacerbated the unequal treatment he suffered as a result of UNOS's alleged policy. Although his Complaint [Doc. No. 1] alleges Massachusetts General Brigham did not make Santos's first referral to the kidney waitlist, Santos does allege that Massachusetts General Brigham referred him to the waitlist in 2019 when he restarted dialysis. Compl. ¶¶ 13–14. And Santos alleges that as his referring hospital, Massachusetts General Brigham was subject to UNOS's "mandate" in January 2023 to investigate whether Santos should receive a wait time adjustment and notify him of his eligibility. Id. ¶¶ 18–19. Santos has alleged that Massachusetts General Brigham failed to notify him until February 2024—over one year after UNOS notified donor hospitals that they must no longer rely on the race-based coefficient—and did not comply with UNOS's one-year deadline. See id. ¶ 19. Additionally, Santos alleges that Massachusetts General Brigham marked him as "inactive" on the waitlist because he suffers from depression, which he alleges is linked to his learning that he did not

7

receive fair consideration for a donor kidney. Id. ¶¶ 20–21. Santos has sufficiently alleged that Massachusetts General Brigham's conduct compounded the harm Santos has suffered by delaying his opportunity to be considered for a donor kidney on the same basis as non-Black patients.

        2.        Standing to Seek Injunctive Relief

Santos seeks to enjoin all Defendants and "their agents, employees, representatives, partners, joint venturers, and/or anyone acting on behalf of, or in concert with [Defendants]," "from engaging in the . . . racial discrimination" described in his Complaint [Doc. No. 1]. Compl., Prayer for Relief ¶ 1 [Doc. No. 1]. Santos also requests that Defendants be enjoined from making him "ineligible to receive a donor kidney by marking him as inactive on the waitlist." Id.

Massachusetts General Brigham contends that Santos's request for injunctive relief should be dismissed because he has not alleged a likelihood of future harm where "the use of a race-based coefficient in calculating eGFR for purposes of kidney transplant waitlist rankings is now prohibited," and his waitlist ranking has already been adjusted using a race-neutral eGFR calculation. MGB Mem. 11–12 [Doc. No. 31]. Santos responds that he has standing to seek injunctive relief because he continues to suffer harm caused from the alleged discrimination so long as he continues to wait for a kidney transplant. Opp'n. to MGB 3 [Doc. No. 42].

"Standing is not dispensed in gross[,] . . . [t]o the contrary, 'a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" Town of Chester, N.Y. v. Laroe Estates, Inc., 581 U.S. 433, 439 (2017) (quoting Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008)). Therefore, a plaintiff who has standing to seek damages

8

must also demonstrate standing to pursue injunctive relief. See id. (citing Los Angeles v. Lyons, 461 U.S. 95, 105–106 & n. 7 (1983)).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974). However, "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring" where "the threatened injury is 'certainly impending', or there is a 'substantial risk' that the harm will occur." Roe v. Healey, 78 F.4th 11, 20 (1st Cir. 2023) (quoting TransUnion LLC v. Ramirez, 594 U.S. 413, 435 (2021); Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)).

As explained in the court's Memorandum and Order [Doc. No. 46] addressing UNOS's Motion to Dismiss [Doc. No. 11], Santos lacks standing to seek injunctive relief preventing Defendants from engaging in discrimination via UNOS's alleged policy that encouraged and allowed hospitals to apply a race-based eGFR adjustment where transplant hospitals must now use race-neutral eGFR calculations and where Santos has been notified of his eligibility for a wait time adjustment. See Mem. & Order 8–9 [Doc. No. 46].

However, Massachusetts General Brigham does not address Santos's further request to enjoin Massachusetts General Brigham from "marking him as inactive on the waitlist." Compl., Prayer for Relief ¶ 1 [Doc. No. 1]. As explained above, that conduct allegedly exacerbated Santos's injury. And where Santos has alleged that he remains inactive on the waitlist, injunctive relief requiring Massachusetts General Brigham to change Santos's waitlist status would redress ongoing harm.

### IV.     Failure to State a Claim

#### A.     *Standard of Review*

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

#### B.     *Title VI—Intentional Discrimination by Tufts*

Tufts argues that Santos has not alleged that he has been subjected to actionable discrimination by Tufts. Mem. ISO Tufts Mot. to Dismiss ("Tufts Mem.") 8 [Doc. No. 25]. Specifically, Tufts asserts that Santos has not alleged that Tufts applied the race-based eGFR adjustment with discriminatory intent. Id. at 9; see also id. at 10 ("Plaintiff fails utterly to allege that Tufts intentionally used the eGFR coefficient to discriminate . . . .").

Title VI of the Civil Rights Act provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. This statute prohibits only intentional discrimination. Alexander v. Sandoval, 532 U.S. 275, 281 (2001). Discriminatory intent "implies that the

10

decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979). To satisfy this standard, plaintiffs must allege "more than intent as volition or intent as awareness of consequences." Id.

Santos has alleged intentional discrimination by Tufts via its application of a facially discriminatory policy to him. Race-based classifications are harmful in and of themselves. See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181, 220–221 (2023) (explaining race-based stereotyping "can only cause continued hurt and injury" (quoting Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 631 (1991) (internal quotations and alterations omitted))). And a facially discriminatory policy constitutes intentional discrimination regardless of the motive for that policy. See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc., 499 U.S. 187, 199 (1991) (explaining "the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect" and does not "alter the intentionally discriminatory character of the policy"). Consequently, Tufts's alleged application of the race-based eGFR adjustment to Santos, which he alleges delayed his addition to the kidney waitlist, see Compl. ¶ 62 [Doc. No. 1], constitutes intentional discrimination within the meaning of Title VI. See Students for Fair Admissions, 600 U.S. at 290 (Gorsuch, J., concurring) ("Title VI prohibits a recipient of federal funds from intentionally treating any individual worse even in part because of his race, color, or national origin and without regard to any other reason or motive the recipient might assert.").

C.  *MPAL Claim*

1.  Threshold Requirements for Plaintiff's MPAL Claims

Both Massachusetts General Brigham and Tufts argue that Santos's claims under M.G.L. c. 272, § 98 ("MPAL") should be dismissed because he did not first file a complaint with the Massachusetts Commission Against Discrimination ("MCAD"). MGB Mem. 11 [Doc. No. 31]; Tufts Mem. 12 [Doc. No. 25]. However, as the court explained in its Memorandum & Order [Doc. No. 46], Santos was not required to file a complaint with MCAD before bringing this action where courts—including the Massachusetts Supreme Judicial Court—have allowed MPAL claims to proceed without the plaintiff first filing a timely complaint with MCAD, and where M.G.L. c. 151B, § 5 makes proceedings before MCAD the exclusive remedy only for acts that are unlawful under M.G.L. c. 151B, § 4. See Mem. & Order 16–17 [Doc. No. 46]. Such acts are not at issue here, and Santos was not required to file his state law claim with MCAD before filing here.

2.  Actionable Conduct by Tufts

Tufts argues that Santos's MPAL claim fails because he "does not allege that he was denied access to [Tuft's] facilities" or "allege that race was the solitary defining factor in terms of the treatment available to him." Tufts Mem. 12 [Doc. No. 25]. Tufts contends that Santos "has not been excluded from a place of public accommodation, nor has he been denied treatment based upon his racial identification." Id.

However, Santos has alleged that absent Tufts's application of the race-based adjustment to his eGFR score, he would have qualified to join the waitlist "significantly earlier." Compl. ¶ 62 [Doc. No. 1]. Santos has thus alleged that Tufts excluded him from the waitlist for a period of time. Further, he has alleged that this exclusion was based on Santos's race where his

Complaint [Doc. No. 1] states that the eGFR modification "was not applied to other racial groups." Id. ¶ 46. Further, where Santos alleges that wait time is a "significant factor" in when patients receive a donor kidney, see id. ¶ 39, he has alleged conduct by Tufts that affected the treatment available to him. Ultimately, where Santos has alleged that Tufts inflated his eGFR score based on his race, he has sufficiently pled that Tufts made a "distinction . . . on account of [his] race" and denied him "full and equal . . . privileges" regarding the kidney waitlist. See M.G.L. c. 272, § 98. Tufts's alleged conduct is thus actionable under MPAL.

### 3. Punitive Damages

Santos seeks punitive damages in addition to compensatory and statutory damages. Compl., Prayer for Relief ¶¶ 2–4 [Doc. No. 1]. Massachusetts General Brigham argues that Santos's requests for punitive damages should be stricken because under Massachusetts law, punitive damages are available only where a defendant's conduct is "outrageous or egregious," which Santos has not sufficiently alleged. MGB Mem. 13 [Doc. No. 31].[1]

Punitive damages are available to plaintiffs who prevail on a claim under MPAL. See M.G.L. c. 151B, § 9. However, punitive damages may be awarded "only where the defendant's conduct is outrageous or egregious." Joyce v. Town of Dennis, 720 F.3d 12, 22 (1st Cir. 2013) (citing Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 110, 914 N.E.2d 59 (2009)). "Such an award 'requires a heightened finding beyond mere liability and also beyond a knowing violation of the statute.'" Id. "In determining whether the defendant's conduct was so outrageous or egregious that punitive damages [in a discrimination claim] are warranted, the fact finder should

---

[1] Massachusetts General Brigham also argues that punitive damages are unavailable under Title VI, MGB Mem. 13 [Doc. No. 31], but Santos has clarified that he does not seek punitive damages for his Title VI claim. Opp'n. to MGB Mem. 13 [Doc. No. 42].

consider all of the factors surrounding the wrongful conduct" including: (1) whether there was a conscious or purposeful effort to demean or diminish the class of which the plaintiff is a part; (2) whether the defendant recklessly disregarded the likelihood of serious harm; (3) the nature of the defendant's conduct after learning that the initial conduct would likely cause harm; (4) the actual harm to the plaintiff; and (5) the duration of the wrongful conduct and any concealment of that conduct by the defendant. Haddad, 455 Mass. at 111.

Based on Santos's allegations here, it is plausible that Santos will be entitled to punitive damages. Santos has alleged that transplant hospitals used race-based adjustments to Black patients' eGFR scores "for decades," and continued to do so after public and published criticism of the assumptions underlying the race-based coefficient. See Compl. ¶¶ 43, 47–49 [Doc. No. 1]. Moreover, Santos alleges that Massachusetts General Brigham did not notify Santos that he was eligible for a wait time adjustment for over one year after UNOS directed hospitals to use race-neutral eGFR calculations, and failed to meet UNOS's one-year deadline to do so. See id. ¶¶ 18–19. Moreover, Massachusetts General Brigham has since marked Santos as inactive based on depression that he alleges is connected to his unequal treatment. Id. ¶¶ 20–21. Based on Santos's allegations as to the length of time that hospitals applied the race-based eGFR adjustment to Black patients and Massachusetts General Brigham's response to the harm Santos has suffered, it is plausible that a factfinder would find Massachusetts General Brigham's alleged conduct "outrageous or egregious." See Haddad, 455 Mass. at 111. And as explained in the court's previous Memorandum and Order [Doc. No. 46], it is premature to strike Santos's request for punitive damages where the determination turns on factual issues and is subject to the factfinder's significant discretion. Mem. & Order 20 [Doc. No. 46].

V.     **Conclusion**

For the foregoing reasons, Tufts's Motion to Dismiss [Doc. No. 24] is DENIED. Massachusetts General Brigham's Motion to Dismiss [Doc. No. 30] is GRANTED as to Santos's request for injunctive relief preventing Defendants from engaging in discrimination via application of a race-based eGFR adjustment and is otherwise DENIED.

IT IS SO ORDERED.

September 15, 2025                                  /s/Indira Talwani
                                                    United States District Judge