UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEON SANTOS,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED NETWORK FOR ORGAN SHARING; TUFTS MEDICAL CENTER; and MASSACHUSETTS GENERAL BRIGHAM INCORPORATED,<br><br>    Defendants. | 1:24-cv-11692-IT |

**DEFENDANTS TUFTS MEDICAL CENTER'S AND MASSACHUSETTS GENERAL BRIGHAM INCORPORATED'S JOINT MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TRANSFER TO SUPERIOR COURT TO CONVENE A MEDICAL MALPRACTICE TRIBUNAL**

NOW COMES the Defendants, Tufts Medical Center ("Tufts") and Massachusetts General Brigham Incorporated ("MGB"), and submits the following Memorandum of Law in support of this Motion to Transfer which is filed herewith. In support of this motion, the Defendants state that the allegations of the Plaintiff in this case mandate that Plaintiff's state-law action be transferred to the Superior Court for the limited purpose of convening a medical malpractice tribunal.

**I.  Overview**

Tufts and MGB seek a transfer of Plaintiff's state-law action to the Superior Court for the limited purpose of convening a medical malpractice tribunal. Massachusetts law requires that a medical malpractice tribunal be convened when there is an action for medical "malpractice, error or mistake." M. G. L. c. 231, § 60B. According to the complaint, Tufts applied a flawed scientific methodology that significantly increased the

1

Plaintiff's wait to receive a donor kidney. But for the use of that methodology, he alleges, he would have received one much sooner. After undergoing a kidney transplant, his body ultimately rejected the kidney, in part, due his weakened state from his wait. Then, when he attempted to receive a donor kidney, MGB employed the same flawed methodology and failed to timely correct it. As a result, his treatment became delayed again, and now his chances are essentially obsolete. Boiled down, those allegations are that Tufts and MGB committed medical errors, causing him harm. That is a medical malpractice action.

## II.     Factual Background

The following factual background is based upon the allegations in the Plaintiff's complaint and is provided for the purpose of this motion to transfer; the following recitations should not be construed or interpreted as an admission of any kind.

Following a diagnosis of kidney disease, the Plaintiff began dialysis treatment. *Complaint, par. 5*. Seeking a donor kidney, he went to Tufts. *See Complaint, par. 10*. Both Tufts and MGB are UNOS approved transplant hospitals, and according to the Complaint, they act as "gatekeepers" for any patient who seeks placement on the national kidney transplant waitlist. *Complaint, par. 35.* Tufts referred him to the national kidney transplant waitlist. *Complaint, pars. 35-36*. As part of the process, Tufts entered the Plaintiff's name and relevant medical information, including his eGFR score, into UNOS's software, UNet, which then considered the Plaintiff's medical status and wait time. *See Complaint, pars. 35, 37*. Whenever a donor kidney becomes available, UNet ranks match candidates on the national kidney waiting list. *Complaint, par. 38.* Kidneys are then offered to transplant hospital patients in accordance with these UNet rankings. *Id.*

2

A large part of UNet's ranking system is based upon wait time points. *Complaint, par. 39.* Within the UNet system, a qualifying wait time is worth one point per year waited. *Id.* According to the Plaintiff, physician referral to the waitlist does not begin qualifying wait time. *Complaint, par. 41.* Rather, to gain qualifying wait time, in general, either: (1) the patient's eGFR score must fall below 20 ml/min; *or* (2) the patient must begin dialysis. *Id.* As part of this calculation, eGFR scores are used to assess a patient's level of kidney dysfunction. *Complaint, pars. 41, 44.*

According to the Complaint, Plaintiff's wait time was artificially adjusted based upon a race-based coefficient in the calculation of eGFR. *See Complaint, pars. 1, 3.* The Complaint alleges this calculated difference artificially increases Black patients' eGFR scores, which suggests better kidney function and essentially increases the amount of time that Black patients are expected to wait for a kidney transplant. *See Complaint, pars. 1, 2, 62-63.* The Complaint describes this as "junk science." *Complaint, par. 48.*

After approximately six years of waiting and dialysis treatment, the Plaintiff received a kidney transplant. *Complaint, par. 11.* Ultimately the donor kidney failed because, according to the Complaint, the Plaintiff's health declined during his wait. *Complaint, par. 12.* He "was informed that, if he had gotten a kidney transplant sooner, he would not have become so sick and his body would have been less likely to reject the donor kidney." *Id.* He then returned to dialysis. *Complaint, par. 13.*

In July 2019, MGB added the Plaintiff back onto the national kidney waitlist. *Complaint, par. 14.* Like Tufts, MGB entered the Plaintiff's name and relevant medical information, including his eGFR score, into UNOS's software. *See Complaint, pars. 14, 35, 37.* According to the complaint, UNOS acknowledged that the race-based coefficient

3

was racially discriminatory by nature in June 2022. *Complaint, par. 17.* It later instructed donor hospitals to notify Black patients of the policy to use a race-neutral calculation and examine whether they qualified to have their wait times adjusted. *Complaint, pars. 17-18.* Donor hospitals, such as MGB, had one year to complete this process. *Complaint, pars. 18, 36.* The Complaint alleges that MGB failed to comply within the required timeframe given but later notified the Plaintiff of his wait time adjustment. *Complaint, par. 19.* According to the Complaint, MGB placed the Plaintiff as an "inactive" on the waitlist because of his depression, rendering him "indefinitely ineligible to be considered for a donor kidney." *Complaint, par. 21.*

The Plaintiff alleged that Black patients who have undergone a lengthened wait time for a donor kidney "have suffered economic damages in the form of medical expenses and lost wages." *Complaint, par. 53.* The Plaintiff now seeks various types of damages, such "economic and personal injuries," specifying that they are "including but not limited to, his severe emotional distress and depression." *Complaint, Prayer for Relief, par. 2.*

### III.     Argument

The common thread running through the Plaintiff's allegations is that Tufts and MGB employed a scientific methodology that resulted in delayed treatment, resulting complications, and personal injury. Those allegations relate to his treatment. They also implicate the professional medical judgment of two hospitals. As such, the Plaintiff's action constitutes medical "malpractice, error or mistake" pursuant to Massachusetts General Laws chapter 231, section 60B. Consequently, a medical malpractice tribunal must be convened.

4

### A. Standard of Review.

Massachusetts law requires that "[e]very action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal." M.G.L. c. 231, § 60B. When the tribunal convenes a hearing, "the plaintiff shall present an offer of proof and said tribunal shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result. *Id.*

When Massachusetts state law actions appear in federal court "pursuant to either diversity or supplemental jurisdiction" transferring such claims to a medical malpractice tribunal is appropriate. *Wittkowski v. Spencer*, 249 F. Supp. 3d 582, 584 (D. Mass. 2017).

### B. The substance of the Plaintiff's state law action relates to medical treatment that directly implicates the medical judgment or competence of the Defendants.

Underlying the Plaintiff's state law action are factual allegations involving his delays in receiving kidney transplants that question the medical competence or judgment of two hospitals. Accordingly, referring the state law action to a medical malpractice tribunal is required under Massachusetts law. *See id.* at 584; M.G.L. c. 231, § 60B. Massachusetts General Laws c. 231, § 60B provides that "[e]very action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal consisting of a single justice of the superior court, a physician licensed to practice medicine in the commonwealth . . . and an attorney authorized to practice law in the commonwealth." The Massachusetts Supreme Judicial Court has interpreted this broadly to mean that "all treatment-related claims [are] meant to be referred to a malpractice tribunal." *Little v. Rosenthal*, 382 N.E.2d 1037, 1040 (Mass. 1978) (holding action under M.G.L. c. 93A, § 9 alleging that nursing home committed unfair or deceptive practice, appropriate subject

5

for tribunal screening process); *see also Salem Orthopedic Surgeons v. Quinn*, 386 N.E.2d 1268, 1269 (Mass. 1979) (holding action for breach of promise by physician or other health care provider to produce a specific medical result is subject to screening provisions of M.G.L. c. 231, § 60B). Furthermore, the statute defines a "provider of healthcare" as "a person, *corporation*, facility or institution licensed by the commonwealth to provide health care or professional services as a physician, *hospital*, clinic or nursing home, dentist . . . ." (emphases added). Accordingly, Tufts and MGB qualify as healthcare providers, entitling them to a medical malpractice tribunal if the action also qualifies.

The Court has stated that the legislative purpose of subjecting claims to tribunals is to discourage frivolous claims against health care providers. *See Salem Orthopedic Surgeons*, 386 N.E.2d at 1272; *Austin v. Bos. Univ. Hosp.*, 363 N.E.2d 515, 516 n.4 (Mass. 1977). Moreover, pursuant to M.G.L. c. 231, § 60B, the tribunal "shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result." The legislature has, therefore, clearly mandated that *every* medical malpractice case *must* be reviewed by a tribunal as defined in M.G.L. c. 231, § 60B. There is no exception. *Austin*, 363 N.E.2d at 519; *Little*, 382 N.E.2d at 1040. Thus, if a medical malpractice case is entered in the United States District Court, the case *must* be transferred to the Superior Court for consideration by a medical tribunal.

The Plaintiff's allegations concern how Tufts and MGB caused him to suffer personal injury by delaying his kidney transplant. *See Complaint, pars. 1, 3, 36.* More specifically, the Plaintiff alleges that he has received significantly delayed medical treatment because Tufts and MGB allegedly employed a race-based coefficient that

artificially inflated the health of his kidney. *See id. at pars. 35, 37, 43, 45.* Such allegations mandate that the case be transferred to Superior Court so a medical malpractice tribunal can be convened.

The allegations encompass the Plaintiff's treatment because they involve delays in receiving a kidney transplant and complications resulting from a kidney transplant. After waiting approximately six years for a donor kidney, the Plaintiff underwent a kidney transplant. *Id. at par. 11.* The Plaintiff's body ultimately rejected the donor kidney, which would have been less likely had he received a kidney transplant sooner. *Id. at par. 12.* The effect of a kidney transplant falls squarely within the ambit of medical treatment. *See MacPhail v. Baker*, 2019 WL 2235177 (Mass. Super. Ct. 2019) (determining that complications from surgery constituted medical treatment justifying a transfer to a medical malpractice tribunal). The complaint further alleges that his second delay in receiving a kidney transplant has resulted, in part, from MGB's failure to provide the Plaintiff with an updated wait time and his depression. *See Complaint, pars. 14, 18-19, 21.* Again, the allegations connect to medical treatment because they are intertwined with medical decision making that impacts his potential treatment.

The Plaintiff's treatment-related allegations also call Tufts' and MGB's medical judgment or competence into question. "For a treatment related claim to be referable, it must be brought against a 'provider of health care'" and "the subject matter of the claim must 'implicate the professional judgment or competence of a provider.'" *Marino v. Turco*, No. 1:18-cv-11442-IT, 2019 WL 6211223, at *2 (D. Mass. Nov. 21, 2019). Asserting that Tufts and MGB employ a methodology that harms the ability of Black patients to receive donor kidneys implicates their professional medical judgment. In his complaint, the

7

Plaintiff alleges that Tufts and MGB are "gatekeepers" of UNOS's policy. *See complaint at par. 35.* Moreover, according to the Complaint, Tufts and MGB agreed to be bound by UNOS's policies and procedures, including the use of the race-based coefficient. *See id. at pars. 36, 42-43.* As part of the alleged agreement, the Complaint specifies that Tufts and MGB must enter a patient's name and relevant medical information, including the patient's eFGR score—which would be artificially inflated for Black patients—before a patient can get added to the national kidney waitlist transplant. *See id. at pars. 35-37, 43.* Those allegations imply that Tufts and MGB agreed to participate in "junk science" based on racist stereotypes. *See id. at pars. 35-37, 47-48*. That resulting allegation would be a direct attack on the professional medical judgment of two hospitals. *See Lambley v. Kamney*, 682 N.E.2d 907, 910 (Mass. App. Ct. 1997) (determining that where "central issues" of a complaint included, *inter alia*, soundness of methodology and accuracy of conclusions they involved "the essence of a medical malpractice case.").

In fact, this district has determined that an action alleging a violation of the Massachusetts Civil Rights Act, along with other allegations—none of which were titled medical malpractice actions—should be referred to a tribunal. *Ward v. Schaefer*, No. 16-12543-FDS, 2017 WL 5505405, at *4-*5 (D. Mass. Nov. 16, 2017). There, the plaintiff also suffered from kidney disease and alleged "physicians made improper medical decisions, and indeed deliberately experimented on him" to gather data that would be helpful to sell to a pharmaceutical company. *See id.* at *1, *5. This very district concluded that this claim "framed in large part as a claim of fraud" should be sent to a medical malpractice tribunal reasoning that resolving the case required "resolving the issue of whether the physicians made appropriate medical decisions." *Id.* at 5. Likewise, here,

8

resolving this case requires resolving the issue of whether Tufts and MGB made appropriate medical decisions in employing the allegedly racist race-based coefficient. *See generally Complaint.*

### C. The complaint sounds in terms of a medical malpractice action.

The Plaintiff's chosen terminology correlates with medical malpractice actions, further demonstrating that referral to a medical malpractice tribunal is appropriate. The "substance, not the legal theory adopted" determines whether an action is appropriate for referral to a medical malpractice tribunal. *Johnston v. Stein*, 562 N.E.2d 1365, 1366 (Mass. App. Ct. 1990) (rescript). By alleging a violation of M. G. L. c. 272, § 98, which prohibits racial discrimination "in any place of public accommodation," the Plaintiff does not preclude referral to a medical malpractice tribunal. In fact, the chosen language of the Complaint employs but-for causation language and logic multiple times. For example, the Complaint alleges that "[b]ut for Tufts's and UNOS's use of the race-based coefficient, upon information and belief, [the Plaintiff] would have received a donor kidney much earlier." *Complaint at par. 64; see also Complaint at par. 62* ("[B]ut had Tufts not used the race-based coefficient, [the Plaintiff's] lab scores would have qualified him to join the waitlist significantly earlier."). By alleging harm in terms of but-for causation, the complaint underscores that the plaintiff's action is one of medical "malpractice, error or mistake." *See* M.G.L. c. 232, § 60B; *see also Doull v. Foster*, 163 N.E.3d 976, 979-80 (Mass. 2021) (concluding that in a medical malpractice case, "the traditional but-for factual causation standard is the appropriate standard to be employed in most cases.")

The Complaint also employs proximate causation logic by alleging that "[a]bsent Defendants' discrimination, upon information and belief, [the Plaintiff] would have waited

9

less time for his first kidney, and that kidney would have failed, avoiding the need for a second donor kidney." *Complaint, at par. 72.* This alleged cascading effect stemming from an error of Tufts and MGB further shows that the Plaintiff considers the action to be in the mold of a medical malpractice action. The chosen language of the Complaint underscores the conclusion that even the Plaintiff views this case through the lens of a medical malpractice action. *See Doe II v. Knighton*, No. 2584CV00687-C, slip op. at 5 (Mass. Super. Ct. July 10, 2025), (concluding that "the express terms of Plaintiff's own pleading leave no room to doubt that . . . the substance of his claims against these Defendants are thus in the nature of professional negligence or malpractice.").[1]

Plaintiff's alleged damages further evoke medical malpractice actions. The complaint alleged that Black patients, such as the Plaintiff, "have suffered economic damages in the form of medical expenses and lost wages." *Id. at par. 53*. It also requested damages that include "economic and personal injuries . . . including but not limited to, his severe emotional distress and depression." *Complaint, Prayer for Relief, at par. 2*. Those damages are precisely the sort that would be sought in a medical malpractice action. *See Lambley*, 682 N.E.2d at 910 (describing the damages sought "loss of wages, other economic detriment, and pain, suffering and embarrassment—are precisely the sort contemplated under the malpractice tribunal scheme."). Considering the substance of the allegations, the chosen language of the complaint, and the damages sought, it is appropriate and consistent with the governing law to refer the Plaintiff's state-law action to the Superior Court for the limited purpose of convening a medical malpractice tribunal.

---

[1] The full text of the opinion is attached as EXHIBIT A.

10

## IV.     Conclusion.

The Plaintiff's allegations that he has received delayed treatment and resulting complications based upon clinical practices which he describes as discriminatory require that a medical malpractice tribunal be convened. He levies these allegations against Tufts and MGB, two healthcare providers. His complaint specifies that both employed a scientific methodology that has harmed him and that, but for its employ, he would have received treatment much sooner. Consequently, he requests personal injury styled damages. The substance of these allegations that are brought against two healthcare providers dictates that a medical malpractice tribunal must be convened in Superior Court.

As outlined in the accompanying motion, counsel for the Defendant believes that oral argument and a hearing would be helpful to explain the position of the Defendant in the action and therefore a hearing has been requested.

The motion should be ALLOWED.

The Defendants
Tufts Medical Center,
By their Attorneys,


*A. Bernard Guekguezian, Esq.*
_____
A. Bernard Guekguezian, BBO #559191
Mary A. Azzarito, BBO #566743
Dominic J. Mazza, BBO# 713405
Adler│Cohen│Harvey│Wakeman│Guekguezian, LLP
2 Oliver Street, Suite 1005
Boston, MA  02109
(617) 423-6674
bguekguezian@adlercohen.com
mazzarito@adlercohen.com

Massachusetts General Brigham,
By their Attorneys,


*Richard J. Riley, Esq.*
_____
Richard J. Riley, BBO# 420610
Bradford Curtis, BBO# 685833
Murphy & Riley, P.C.
100 Franklin Street, Suite 500
Boston, MA  02110
rriley@murphyriley.com
bcurtis@murphyriley.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true copy of the above document will be served electronically to the attorney of record for each party via the ECF system on October 23, 2025.

*A. Bernard Guekguezian*
_____
A. Bernard Guekguezian