UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DEON SANTOS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| UNITED NETWORK FOR ORGAN | * | Civil Action No. 1:24-cv-11692-IT |
| SHARING, TUFTS MEDICAL CENTER, | * | |
| and MASSACHUSETTS GENERAL | * | |
| BRIGHAM INCORPORATED, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER

June 18, 2026

Pending before the court is the Motion to Transfer to Superior Court to Convene a

Medical Malpractice Tribunal [Doc. No. 66] (Motion to Transfer) filed by Defendants Tufts

Medical Center ("Tufts") and Massachusetts General Brigham Incorporated ("MGB"). Tufts and

MGB seek a transfer to Suffolk County Superior Court "for the limited purpose of convening a

Medical Practice Tribunal." Id. at 1. For the reasons set forth below, the Motion to Transfer

[Doc. No. 66] is DENIED.[1]

## I.       Background as Alleged in the Complaint

A. *The National Kidney Transplant Wait List*

The court briefly summarizes the factual allegations in the Complaint [Doc. No. 1]

relevant to the Motion to Transfer [Doc. No. 66]:

---

[1] Plaintiff Deon Santos's pending Motion for Leave to Amend the Pleadings to Add Class
Claims [Doc. No. 61] is under advisement and will be addressed separately.

The United Network for Organ Sharing ("UNOS") operates the nation's Organ Procurement and Transplantation Network ("OPTN") and, as relevant to this case, manages a national kidney transplant waiting list (the "waiting list"). Compl. ¶¶ 32–33 [Doc. No. 1]; see 42 U.S.C. § 274(a)–(b) (creating OPTN and tasking the entity with maintaining a national registry for organ matching). To be placed on the waiting list, a patient must be referred by a physician at one of over 200 transplant hospitals in the United States. Compl. ¶ 35 [Doc. No. 1].

When a patient receives the requisite referral, the referring transplant hospital adds the patient to the waiting list by entering the patient's name and medical information into UNet, UNOS's waiting list management software. Id. ¶ 37. Using an algorithm, UNet ranks patients for available donor kidneys based primarily on patients' "wait time points[.]" Id. ¶¶ 39, 46. Patients do not begin accruing wait time points until they are either medically required to begin dialysis or their estimated glomerular filtration rate ("eGFR") scores fall below 20 mL/min. Id. ¶ 41.

For many years, UNet's algorithm adjusted Black patients' eGFR scores using a race-based coefficient, which overstated their kidney function by 16% to 18%. Id. ¶ 43. This adjustment could inflate patients' eGFR scores above the 20 ml/min threshold, thereby preventing these patients from beginning to accrue wait time at the appropriate juncture and ultimately delaying their kidney transplants. Id. ¶ 44. The race-based coefficient, which Plaintiff alleges has never been supported by serious scientific research, was derived from a general assumption that Black Americans have greater muscle mass and, by extension, naturally greater creatinine levels than non-Black individuals. Id. ¶¶ 43, 47.

In June 2022, UNOS acknowledged that the race-based coefficient "led to a systemic underestimation of kidney disease severity for many Black patients," Id. ¶ 17. It then mandated that transplant hospitals use a race-neutral calculation when estimating a patient's kidney

function and, in July 2022, officially discontinued the use of the race-based coefficient. Id. ¶¶ 17, 57. In January 2023, UNOS announced a new policy, under which transplant hospitals were required to notify their patients that Black Americans would be considered for wait time adjustments where use of the race-based coefficient delayed the point at which patients' wait time began to accrue. Id. ¶ 59. The new policy also mandated that the transplant hospitals submit any wait time adjustments to UNOS no later than January 3, 2024, and to notify patients of their status. Id.

B. *The Plaintiff*

Plaintiff Deon Santos, who is Black, was diagnosed with kidney disease in 2007. Id. ¶¶ 3, 5. When Santos began regular chronic dialysis in 2008, he was added to the waiting list by Tufts. Id. ¶¶ 5, 10, 36. He ultimately received a kidney transplant in January 2014. Id. ¶ 11. Santos alleges that, but for Tufts's use of the race-based coefficient, he would have been added to the waiting list at an earlier time. Id. ¶ 11.

Santos's health deteriorated during the approximately six-year period in which he waited for a transplant, ultimately leading to the failure of Santos's new kidney within a few years. Id. ¶ 12. In July 2019, Santos restarted dialysis, which he now undergoes every day for eight hours, and was added back to the waiting list by MGB. Id. ¶¶ 5, 13–14.

On February 9, 2024—over twelve months after UNOS mandated that donor hospitals no longer use the race-based coefficient and roughly one month after UNOS's deadline for transplant hospitals to submit wait time adjustment requests—MGB notified Santos that he was eligible for a ten-month wait time adjustment. Id. ¶¶ 18–19. After receiving the adjustment notification, Santos became depressed. Id. ¶ 20. In light of this change in Santos's mental health, MGB marked Santos as "inactive" on the national kidney waitlist. Id. ¶ 21. Santos is indefinitely ineligible to receive a donor kidney unless his "ineligible" status is changed. Id.

3

## II.    Standard of Review

When a party raises a Massachusetts state law claim alleging medical malpractice, a court generally must refer the claim to a medical malpractice tribunal to determine whether a plaintiff has submitted sufficient evidence to raise a legitimate question of liability appropriate for judicial inquiry. Mass. Gen. Laws ch. 231, § 60B; Feinstein v. Mass. General Hosp., 643 F.2d 880, 885 (1st Cir. 1981). The tribunal "discourages frivolous claims by 'reviewing the medical aspects of the claim for the purpose of distinguishing between cases of tortious malpractice and those involving merely an unfortunate medical result.'" Bennett v. Collins, 496 Mass. 737, 742, 270 N.E.3d 83, 88 (2025) (quoting Vasa v. Compass. Med., P.C., 456 Mass. 175, 178, 921 N.E.2d 963, 966 (2010)).

A claim may be referred to the tribunal if it is brought against a "provider of health care[,]" as defined by Mass. Gen. Laws ch. 231, § 60B ("Section 60B"), and if the claim's subject matter "implicate[s] the professional judgment or competence of a provider[,]" Vasa, 456 Mass. at 180, 921 N.E.2d at 967 (quotation omitted). Referral is appropriate only when there is an "issue of medical malpractice, error, or mistake." Mass. Gen. Laws ch. 231, § 60B; see, e.g., McMahon v. Glixman, 379 Mass. 60, 67–68, 393 N.E.2d 875, 880 (1979) ("[W]hether the plaintiff's claim [against an optometrist] was barred by the statute of limitations was not within the jurisdiction of the tribunal[.]").

## III.    Discussion

In his Complaint [Doc. No. 1], Santos asserts two claims against Tufts and MGB (collectively, the "Hospital Defendants"): (1) violation of Title VI of the Civil Rights Act of 1964; and (2) Crimes Against Chastity, Morality, Decency, and Good Order, in violation of Mass. Gen. Laws ch. 272, § 98 (the "Massachusetts Public Accommodation Law" or "MPAL"). Id. ¶¶ 73–90.

4

The Hospital Defendants contend that a medical malpractice tribunal should be convened where Santos's claim "directly implicates the professional judgment of Tufts and MGB" and Santos "alleges that Tufts and MGB committed medical errors that directly and proximately caused him harm." Mot. to Transfer 3 [Doc. No. 66]. Santos asserts that his claim does not fall under the purview of a state medical malpractice tribunal because it is based on alleged civil rights violations arising from the Hospital Defendants' transplant-related policies, rather than from medical judgments. See Opp'n 2–3 [Doc. No. 72].

A.  *Scope of the Motion to Transfer*

Although the Hospital Defendants ask the court to "transfer this case" and "transfer[] this civil action" in their motion, Mot. to Transfer 1, 3 [Doc. No. 66], they limit their request in their accompanying memorandum to a "transfer of [Santos's] state-law action to the Superior Court for the limited purpose of convening a medical malpractice tribunal[.]" Joint Mem. ISO Mot. to Transfer 1 [Doc. No. 66-1] (emphasis added). Where the Hospital Defendants do not offer any argument as to why the court should transfer Santos's federal claim under Title VI or cite to any legal authority under which the court could do so, the court understands the Motion to Transfer [Doc. No. 66] as seeking to transfer only Santos's state law claim under MPAL.

In relevant part, MPAL provides:

> All persons shall have the right to the full and equal accommodations, advantages, facilities, and privileges of any place of public accommodation . . . subject only to the conditions and limitations established by law and applicable to all persons. This right is recognized and declared to be a civil right.

Mass. Gen. Laws ch. 272, § 98. The statute also sets forth penalties for any person who "makes any distinction, discrimination or restriction on account of race, color, religious creed, national origin, sex, gender identity, sexual orientation . . . in any place of public accommodation" or who "aids or incites such distinction, discrimination, or restriction[.]" Id.

5

In support of his claim that the Hospital Defendants violated MPAL by "engag[ing] in racial discrimination[,]" Compl. ¶ 88 [Doc. No. 1], Santos asserts, inter alia, that "[b]ut for Tufts's and UNOS's use of the race-based coefficient, upon information and belief, [Santos] would have received a donor kidney much earlier[,]" id. ¶ 64, and that "[MGB] caused [Santos] separate, discrete injuries by prejudicing his candidacy for a second donor kidney, causing him to suffer severe depression, and then marking him as inactive on the waitlist[,]" id. ¶ 72. The Hospital Defendants characterize Santos's allegations as "encompass[ing] [his] treatment because they involve delays in receiving a kidney transplant and complications resulting from a kidney transplant" and "call[ing] Tufts' and MGB's medical judgment or competence into question[.]" Joint Mem. ISO Mot. to Transfer 7 [Doc. No. 66-1].

B.  *Analysis*

The court begins with the Hospital Defendants' reliance on Ward v. Schaefer, No. 16-12543-FDS, 2017 WL 5505405 (D. Mass. Nov. 16, 2017), for their assertion that a violation of a state civil rights law arising in a medical context is appropriately referred to a medical malpractice tribunal. Joint Mem. ISO Mot. to Transfer 8 [Doc. No. 66-1].

In Ward, the plaintiff brought suit against three physicians for claims arising out of the physicians' alleged fraudulent inducement of the plaintiff's participation in a "non-therapeutic, experimental drug trial." Ward, 2017 WL 5505405, at *1. The Hospital Defendants are correct that, even where the plaintiff in Ward raised civil rights claims but did not specifically assert a medical malpractice claim, the court permitted transfer of that case for the purpose of convening a medical malpractice tribunal. Id. at *5, 8; see id. at *4 (listing plaintiff's claims as fraud; lack of informed consent; unjust enrichment; violations of the Due Process Clause of the United States Constitution, the Massachusetts Declaration of Rights, and the Nuremberg Code; violation of the Massachusetts Civil Rights Act; and civil conspiracy). But the court was also clear that

6

"[n]ot all claims arising in the medical context . . . must be referred to a medical malpractice tribunal[,]" including "claims for violations of the Massachusetts Civil Rights Act . . . where the plaintiff does not allege that the violations directly implicated the professional judgment or competence of a medical provider." Id. at *5 (first citing Leininger v. Franklin Med. Ctr., 404 Mass. 245, 248, 534 N.E.2d 1151, 1153 (1989); and then citing Koltin v. Beth Israel Deaconess Med. Ctr., 62 Mass. App. Ct. 920, 920, 817 N.E.2d 809, 811 (2004)).

The Massachusetts Supreme Judicial Court's decision in Leininger exemplifies this distinction. In Leininger, the plaintiff filed suit against a medical center, the director of the center's psychiatric unit, and a staff psychiatrist for allegedly "commit[ing] [the plaintiff] to a mental health facility illegally because they failed to follow the requirements of the civil commitment statute, G.L. c. 123, § 12 (1986 ed.)." 404 Mass. at 245, 534 N.E.2d at 1151. The plaintiff asserted claims for violation of her civil rights under Mass. Gen. Laws ch. 12, § 11, false imprisonment, and intentional infliction of emotional distress. Id. at 245–46. On appeal, the Supreme Judicial Court held that the plaintiff's complaint was erroneously referred to a medical malpractice tribunal because the plaintiff "[d]id not claim the defendants were negligent or mistaken in terms of their medical judgment or treatment" and the defendants' alleged "[f]ail[ure] to comply with the civil commitment statute was not a medical decision." Id. at 248; see also Knight v. Brockton Hosp., 77 Fed. App'x 22, 23–24 (1st Cir. 2003) (holding that plaintiff's 42 U.S.C. § 1983 claim against two hospitals for allegedly subjecting plaintiff to twenty-one days of confinement "without legal justification and without his consent" should not have gone to a medical malpractice tribunal).

The court similarly finds that Santos's civil rights claim under MPAL, although it is linked to the kidney transplants Santos received or sought through the Hospital Defendants, is

not of the type contemplated for referral by Section 60B because the algorithmic application of the race-based coefficient to Santos's eGFR score did not "implicate the professional judgment or competence" of Tufts or MGB. Vasa, 456 Mass. at 180; see Ward, 2017 WL 5505405, at *5.

As alleged in the Complaint [Doc. No. 1], the Hospital Defendants' calculation of Santos's kidney function did not arise from any assessment or judgment concerning Santos's health specifically or from either Hospital Defendant's particular approach to treating or managing patients with kidney disease. Instead, Santos's MPAL claim is traceable to the Hospital Defendants' undifferentiated use of UNet and the race-based coefficient embedded therein as a general policy or practice of the UNOS-facilitated kidney transplant process. See, e.g., Compl. ¶¶ 11–14, 37, 39, 41–47 [Doc. No. 1]. Santos's claim that MGB did not inform him of UNOS's policy change regarding the race-based coefficient within the timeline set forth by UNOS, see id. ¶ 19, is likewise not a medical decision or judgment, but an alleged instance of noncompliance with UNOS's updated requirements. Accordingly, where the thrust of Santos's legal argument is the Hospital Defendants' alleged application of a "discriminatory policy" to "all Black kidney patients[,]" Opp'n 9 [Doc. No. 72], rather than the kind or quality of medical treatment Santos received as a consequence of that policy, a medical malpractice tribunal does not have jurisdiction over Santos's MPAL claim. See Leininger, 404 Mass. at 248, 534 N.E.2d at 1153; see also Knight, 77 Fed. App'x at 23–24.

The Hospital Defendants' citation to Lambley v. Kameny, 43 Mass. App. Ct. 277, 682 N.E.2d 907 (1997), does not counsel otherwise. The Hospital Defendants assert that, in Lambley, the Massachusetts Appeals Court held that, "where 'central issues' of a complaint include, inter alia, soundness of methodology and accuracy of conclusions[,] they involved 'the essence of a medical malpractice case.'" Joint Mem. ISO Mot. to Transfer 8 [Doc. No. 66-1] (quoting

8

Lambley, 43 Mass. App. Ct. at 281, 682 N.E. at 910). Although the Hospital Defendants suggest that their alleged reliance on the "junk science" of a race-based coefficient is likewise an issue of methodology and the soundness of resulting medical conclusions, see id. (quoting Compl. ¶ 48 [Doc. No. 1]), Lambley's holding is more limited:

> The central issues raised by Lambley's complaint . . . are the nature and extent of [the psychiatrist's] interview, examination and evaluation of Lambley, the soundness of [the psychiatrist's] methodology, and the accuracy of his conclusions and diagnosis drawn therefrom. These issues are the essence of a medical malpractice case.

43 Mass. App. Ct. at 281, 682 N.E.2d at 910. Lambley was thus focused on the diagnostic process in which a medical provider engaged and the veracity of the diagnosis at which the provider arrived based on that process, rather than the underlying policies or norms to which the medical provider adhered in rendering medical decisions. See id.

The court also finds no merit in the Hospital Defendants' argument that Santos's "chosen terminology [in the complaint] correlates with medical malpractice actions[.]" Joint Mem. ISO Mot. to Transfer 9 [Doc. No. 66-1]. That the Complaint [Doc. No. 1] "employs but-for causation language and logic multiple times" and "employs proximate causation language[,]" Joint Mem. ISO Mot. to Transfer 9 [Doc. No. 66-1], says nothing about the nature of the asserted claims where such causation arguments are not specific to medical malpractice. See, e.g., Doull v. Foster, 487 Mass. 1, 6–7, 163 N.E.3d 976, 982 (2021) (describing "but-for causation" and proximate cause as going to the "bedrock principle of negligence law that a defendant cannot and should not be held liable for a harm unless the defendant caused the harm"); Edwards v. Commonwealth, 488 Mass. 555, 573, 174 N.E.3d 1153, 1168 (2021) (holding that the "'determinative' or 'but-for' cause" standard applied "in employment discrimination cases should be used in claims for retaliation brought under the whistleblower act").

9

The Hospital Defendants' attempt to cast the types of damages alleged in the <u>Complaint</u> [Doc. No. 1] as markers of a medical malpractice claim, <u>see</u> Joint Mem. ISO Mot. to Transfer 10 [Doc. No. 66-1], is likewise unavailing. In his <u>Complaint</u> [Doc. No. 1], Santos seeks damages for "economic and personal injuries suffered . . . including but not limited to his severe emotional distress and depression"; "punitive and exemplary damages"; statutory damages under Mass. Gen. Laws ch. 272, § 98; prejudgment interest; and reasonable attorneys' fees and costs. Compl. 19 ¶¶ 2–6 [Doc. No. 1]. Although these damages may be typical of medical malpractice actions, the Hospital Defendants have not demonstrated that such damages are exclusive to, or necessarily indicative of, such actions.[2]

Accordingly, the court finds no basis on which to conclude that Santos's MPAL claim must be transferred to the Suffolk County Superior Court for the purpose of convening a medical malpractice tribunal under Mass. Gen. Laws ch. 231, § 60B.

---

[2] The Hospital Defendants have also submitted a 2025 Suffolk County Superior Court decision as support for their assertion that "the chosen language of the Complaint underscores the conclusion that even the Plaintiff views this case through the lens of a medical malpractice action." Joint Mem. ISO Mot. to Transfer 10 (citing Mem. of Decision & Order on Def.'s Lien, the Gen. Hosp. Corp. & Mass. Gen. Physicians Org.'s Mots. for Entry of Tribunal Findings Requiring Pl. to Post a Bond for Failure to File a Timely Offer of Proof at 5, <u>Doe II v. Knighton</u>, No. 2584CV00687-C (Mass. Super. Ct. July 10, 2025) [Doc. No. 66-2]). The cited decision is inapposite where the court found, <u>inter alia</u>, that the claims at issue, which involved a medical assistant's unauthorized physical examination, arose from duties allegedly owed to the plaintiff that "derive entirely from [the plaintiff's] status as a patient receiving medical care, and that the substance of his claims . . . are thus in the nature of professional negligence or malpractice." Mem. of Decision & Order at 5, <u>Doe II v. Knighton</u>, No. 2584CV00687-C. Santos, by contrast, focuses his claim on the alleged racially discriminatory UNOS policy to which the Hospital Defendants subscribed and raises no allegations concerning professional negligence or malpractice.

## IV.    Conclusion

For the foregoing reasons, the <u>Motion to Transfer to Superior Court to Convene a Medical Malpractice Tribunal</u> [Doc. No. 66] is DENIED.

IT IS SO ORDERED.

June 18, 2026                                   /s/ Indira Talwani
                                                United States District Judge